# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEE J. ROWLAND,** | : | **CIVIL NO. 1:CV-12-2299** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| v. | : | |
| | : | |
| **WARDEN TOM DURAN, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Lee J. Rowland, an inmate currently incarcerated at the State

Correctional Institution at Rockview in Bellefonte, Pennsylvania ("SCI-Rockview"),

commenced this civil rights action with a complaint filed on November 19, 2012,

pursuant to the provisions of 42 U.S.C. § 1983.  (Doc. 1.)  In his complaint, Plaintiff

claims he received inadequate medical care for a foot injury he sustained while

temporarily housed at the Clinton County Correctional Facility ("CCCF") in

McElhattan, Pennsylvania.  Named as Defendants are a number of prison officials and

medical personnel from CCCF and SCI-Rockview.[1]  As relief, Plaintiff seeks

compensatory and declaratory relief.

---

[1]  Named as Defendants are the following individuals: Superintendent Marirosa Lamas; Superintendent Robert Marsh; Deputy Superintendent Jeffrey Horton; Ted Williams; C. Spangler; Mr. Rackovan; and T. Miller (collectively, "Corrections Defendants"); Warden Tom Duran; Deputy Warden Jacqueline Motter; Deputy Warden Harkey; Ms. Rupert (collectively, "County Defendants"); Ms. Reeder; Dr. Greenburg; and Physician's Assistant Schrack (collectively, "Medical Defendants").

Presently before the court are two motions to dismiss filed by three sets of Defendants: Corrections Defendants (Doc. 18), County Defendants (Doc. 20), and Medical Defendants (Doc. 20). (*See supra* note 1, for Defendant identification.) For the reasons set forth below, the motions to dismiss will be granted.

I.     **Background**

In his complaint, Plaintiff provides the following factual background with respect to his claims. For purposes of disposition of the instant motions to dismiss, the factual allegations asserted in the complaint will be accepted as true and viewed in a light most favorable to Plaintiff.

Plaintiff alleges that sometime between 7:00 a.m. and 8:30 a.m. on December 18, 2010, while housed in the G-Block at CCCF, he injured his left foot in a fall from a dilapidated step that had collapsed. (Doc. 1, p. 4, ¶¶ 1, 3.) On that same date, a CCCF nurse examined his foot and recommended that he use an ice pack on his foot and keep it elevated. (*Id.* ¶ 4.) The nurse also scheduled an appointment with the Physician's Assistant ("PA"). (*Id.*)

On December 28, 2010, Plaintiff was seen by PA Schrack, who "determined something was wrong," and recommended that Plaintiff use an ice pack on his left foot and use a pillow to keep it elevated. (*Id.* ¶¶ 5, 6.)

Plaintiff asserts that during this time in CCCF, prison officials and medical staff denied his many written requests for medical attention. (*Id*. ¶ 9.) The exhibits attached to his complaint contain the following information with respect to that allegation. (Doc. 1 at 21-25, Exs. A-E.) On December 27, 2010, Plaintiff submitted an inmate request slip to the medical department, asking what he should use to elevate his injured foot. (Doc. 1 at 23, Ex. C.) In a response sent the same day, Nurse Rupert stated, "You were told this morning to lay in bed and prop your foot on top of your property bag. You cannot prop your feet up on furniture in the day area." (*Id*.) (emphasis in original).

On December 30, 2010, Plaintiff submitted an inmate request slip to Deputy Warden Motter asking for a pillow in order to elevate his injured left foot. (Doc. 1 at 21, Ex. A.) On that same date, Deputy Warden Motter responded, "When you are elevating your foot in your cell - use your blanket." (*Id*.)

On January 5, 2011, Plaintiff submitted another inmate request slip to Deputy Warden Motter, requesting a second blanket in order to elevate his foot, and indicating that his foot "is continuously swelling and not getting any better and I'm not receiving any medical attention." (Doc. 1 at 22, Ex. B.) In a response dated January 6, 2011, Deputy Warden Motter responded, "If your symptoms are not improving - submit a new request to medical to address." (*Id*.)

3

On January 9, 2011, Plaintiff submitted an inmate request slip to the medical department, asking to be added to the sick call list. (Doc. 1 at 24, Ex. D.) In response, an unidentified medical department staff member responded, "You were seen by the PA-C concerning your foot on 12-28-10." (*Id*.)

On January 10, 2011, Plaintiff submitted an inmate request slip to the medical department, stating that his foot was still swollen and in pain, and requesting an x-ray. (Doc. 1 at 25, Ex. E.) In response, an unidentified medical department staff member responded, "Old injury. X-rays too late." (*Id*.)

On February 7, 2011, Plaintiff was transferred to SCI-Rockview. (Doc. 1, p. 5 ¶ 2.) Prior to his transfer, Plaintiff alleges that on February 4, 2011, he spoke with a counselor from SCI-Rockview about his foot injury. (*Id*. ¶ 1.) However, when he was transferred, he was placed in solitary confinement (administrative custody) rather than the medical ward. (*Id*. ¶ 2.)

On February 22, 2011, Plaintiff received medical treatment and an X-ray of his left foot. (*Id*.) The X-ray technician diagnosed Plaintiff with a broken foot that had begun to heal. (*Id*. ¶ 4.)

On March 18, 2011, Plaintiff had a video conference with an outside orthopedic doctor who, according to Plaintiff, provided the following findings and recommendation: "his observation of the X-ray was the injury looked to be healing

4

and it would take some time for an injury as if that to heal completely.  Not to apply

extreme force or pressure on my injured [foot.]"  (*Id*. ¶ 5.)  Plaintiff does not assert

that the doctor recommended any additional treatment other than to avoid extreme

force or pressure.  (*See id*.)

In addition to these allegations, Plaintiff provides the following with respect to

exhaustion of his administrative remedies.  Initially, the court notes that Plaintiff

asserts that he was transferred back to CCCF from SCI-Rockview in May of 2011, and

then transferred again to SCI-Rockview from CCCF in November 2011.  (Doc. 1, p. 6

¶¶ E, F.)  Plaintiff alleges that during his incarceration at both institutions during this

time, he was using the prison grievance procedure available to him to grieve his

complaints about treatment of his foot injury.  (*Id*. at 6.)  Specifically, on February 10,

2011, Plaintiff filed an inmate request form to Nurse William at SCI-Rockview,

requesting an X-ray for his left foot.  (Doc. 1 at 31, Ex. J.)  In response, Nurse

William instructed Plaintiff to sign up for sick call.  (*Id*.)

On April 11, 2011, Plaintiff submitted grievance number 362732 to SCI-

Rockview Grievance Coordinator Rackovan, presumably related to his confinement in

administrative custody.  (Doc. 1 at 35, Ex. K-A.)  The grievance contains no reference

to Plaintiff's foot injury or any delay in medical treatment.  (*See id*.)  The grievance

was rejected and Plaintiff's subsequent appeals were denied.  (Doc. 1 at 32, 34, 36.)

On May 25, 2011, Plaintiff filed a grievance at CCCF, informing the CCCF medical department that he had been diagnosed with a broken bone in his foot while he was at SCI-Rockview. (Doc. 1 at 28, Ex. G-B.) In a response sent the same date, Nurse Reeder informed Plaintiff that the CCCF medical department did not yet have documentation from SCI-Rockview regarding his diagnosis. (*Id.* at 27, Ex. G.)

On August 16, 2011, Plaintiff filed an inmate request slip to the medical department at CCCF requesting treatment for his toenail fungus. (Doc. 1 at 26, Ex. F.) In a response, Nurse Reeder informed Plaintiff that fungus in toenails is not treated at CCCF. (*Id.*) Further, in a Cumulative Adjustment Record dated September 2, 2011, Medical Administrator Spangler informed Plaintiff that "[t]he only treatment for foot fungus (*i.e.* athlete's foot) would be an anti-fungal cream. We do not treat toenail fungus here either. Anti-fungal pills are pretty bad for the liver so they aren't used for things like this unless it's an extreme case." (Doc. 1 at 29, Ex. H.)

## II.    Standard of Review - Motion to Dismiss

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule

8(a)(2) "depends on the type of case[, because] some complaints will require at least

some factual allegations to make out a showing that the pleader is entitled to relief."

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).

"[A] situation may arise where, at some point, the factual detail in a complaint is so

undeveloped that it does not provide a defendant the type of notice of claim which is

contemplated by Rule 8." *Id.* In such a case, a defendant may attack a complaint by a

motion under Rule 12(b)(6) for failure to state a claim upon which relief can be

granted.

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to

accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551

U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations

contained therein, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), and

view them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170,

177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above

the speculative level" such that the plaintiff's claim is "plausible on its face," a

complaint will survive a motion to dismiss. *Iqbal*, 556 U.S. at 663 (citing *Twombly*,

550 U.S. at 570) (explaining a claim has "facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

7

defendant is liable for the misconduct alleged"); *see also Phillips*, 515 F.3d at 234;

*Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495

F.3d 62, 66 (3d Cir. 2007).  Further, when a complaint contains well-pleaded factual

allegations, "a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id*. at 664.  However, a court is "not

bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678

(quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint and matters of public

record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192,

1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263,

268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that

a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are

based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196.

Additionally, "documents whose contents are alleged in the complaint and whose

authenticity no party questions, but which are not physically attached to the pleading,

may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d

Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d

383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment" (internal quotation omitted)).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient.  *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

9

## III.    Discussion

In order to state a viable Section 1983 claim, a plaintiff must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The defendant's conduct must have a close causal connection to the plaintiff's injury in order for Section 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[2]  A prerequisite for a viable civil rights claim is that the defendant directed, or knew of and acquiesced in, the deprivation of the plaintiff's constitutional rights.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  On its face, Section 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is well-settled that certain government officials possess immunity from Section 1983 liability.  *Id.*

In their motion to dismiss, Corrections Defendants seek dismissal of the complaint on the basis that: (1) Plaintiff failed to exhaust his administrative remedies

---

[2]  The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute."  *Martinez*, 444 U.S. at 285 (internal citations omitted).

10

with respect to his inadequate medical care claims; (2) Plaintiff's claims for money damages against Defendants in their official capacities should be dismissed for failure to state a claim; and (3) Plaintiff has failed to state a claim of denial of adequate medical care. In their motion to dismiss, County Defendants and Medical Defendants seek dismissal of the complaint on the basis that: (1) Defendants Duran, Harkey, Reeder, Greenberg and Schrack were not properly served with the complaint; (2) Plaintiff has failed to allege personal involvement by Defendants Duran, Harkey and Greenberg with respect to his denial of adequate medical care claims; and (3) Plaintiff has failed to state a claim of denial of adequate medical care. Because the court finds that Plaintiff has failed to state a claim for denial of adequate medical care with respect to treatment of his foot, Defendants' motions to dismiss will be granted and the court need not address Defendants' additional arguments.

Prison officials are required under the Eighth Amendment to provide basic medical treatment to prisoners. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To demonstrate a *prima facie* case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle*, 429 U.S. at 104 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this

11

standard.  Initially, a plaintiff must make an "objective" showing that the deprivation

was "sufficiently serious," or that the result of the defendant's denial was sufficiently

serious.  Additionally, the plaintiff must make a "subjective" showing that the

defendant acted with "a sufficiently culpable state of mind."  *Wilson v. Seiter*, 501

U.S. 294, 298 (1991); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir.

2002).  "Deliberate indifference" may be manifested by an intentional refusal to

provide medical care, delayed medical treatment for non-medical reasons, a denial of

prescribed medical treatment, or a denial of reasonable requests for treatment that

results in suffering or risk of injury.  *Durmer*, 991 F.2d at 68; *see also Spruill v. Gillis*,

372 F.3d 218, 235 (3d Cir. 2004) (quoting *White v. Napolean*, 897 F.2d 103, 109 (3d

Cir. 1990) (finding that the "deliberate indifference to serious medical needs" standard

is met when pain is intentionally inflicted on a prisoner, where the denial of

reasonable requests for medical treatment exposes an inmate to undue suffering or the

threat of tangible residual injury, or when, despite a clear need for medical care, there

is an intentional refusal to provide that care)).  This test "affords considerable latitude

to prison medical authorities in the diagnosis and treatment of the medical problems of

inmate patients.  Courts will 'disavow any attempt to second guess the propriety or

adequacy of a particular course of treatment . . . which remains a question of sound

professional judgment.'"  *Little v. Lycoming Cnty.*, 912 F. Supp. 809, 815 (M.D. Pa.

1996) (citing *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

Further, when an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White*, 897 F.2d at 108-10; *see also Estelle*, 429 U.S. at 105-06 (medical malpractice is an insufficient basis upon which to establish an Eighth Amendment violation); *Rouse*, 182 F.3d at 197 ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (mere allegations of malpractice do not raise issues of constitutional import). Further, with respect to treatment with an X-ray, the Supreme Court has stated, "[T]he question whether an X-ray – or additional diagnostic techniques or forms of treatment – is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not

13

represent cruel and unusual punishment. At most it is medical malpractice . . . ."
*Estelle*, 429 U.S. at 107.

Finally, in *Durmer*, the Third Circuit Court of Appeals added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. *Durmer*, 991 F.2d at 69. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. *See id*.

Here, Plaintiff acknowledges that prison officials at both CCCF and SCI-Rockview provided medical treatment for the injury to his foot. In fact, viewing the complaint in a light most favorable to Plaintiff, it is apparent that throughout the relevant time period, Plaintiff was seen on numerous occasions by medical staff at both CCCF and SCI-Rockview for treatment for his foot injury.[3] When he was seen at CCCF after the accident, Plaintiff was not immediately diagnosed with a broken foot and X-rays were not ordered. However, medical staff at CCCF did recommend a

---

[3] In their motion to dismiss, County Defendants and Medical Defendants argue that Plaintiff has failed to state a claim with respect to his allegations relating to treatment for his toenail fungus. (Doc. 21 at 14.) While Plaintiff does attach to his complaint grievance forms relating to his toenail fungus, (Doc. 1 at 26, 29), his complaint does not contain any allegations against any Defendant with respect to this condition. Nevertheless, the court concludes that Plaintiff's toenail fungus does not constitute a serious medical need. *See Tsakonas v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009) (determining that the ailments of "weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles" were not serious medical needs).

14

course of treatment that included resting in bed, using an ice pack, and elevating his

foot with his property bag, a pillow, or a blanket.  Further, even though on January 10,

2011, an unidentified individual at CCCF informed Plaintiff that X-rays were

untimely, when Plaintiff was soon thereafter transferred to SCI-Rockview, medical

staff there provided Plaintiff with an X-ray and other medical treatment.  Given these

allegations, the complaint does not sufficiently allege that any significant delay in

diagnosing Plaintiff's broken foot was deliberate or intentional on the part of any

Defendant.  Moreover, even though SCI-Rockview officials placed Plaintiff in

administrative custody, or solitary confinement as described by Plaintiff, he still

received medical attention while there.  In addition, Plaintiff was evaluated by an

outside orthopedic doctor, who concluded that the injury was healing, but would take

some time to heal completely.  The outside doctor also advised Plaintiff to avoid

extreme force or pressure on his foot.  He did not recommend any further treatment.

Unfortunately, despite all of this medical intervention, Plaintiff alleges that he

continued to suffer from discomfort at each institution.  However, this is clearly a case

where Plaintiff was provided with medical attention, but is dissatisfied with the course

of treatment and subsequent results.  In fact, at most, Plaintiff's complaint alleges

medical malpractice or a disagreement with medical treatment.  It is well-established

that "a complaint that a physician has been negligent in diagnosing or treating a

15

medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Rouse*, 182 F.3d at 197. Further, an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 235. Courts will not second guess whether a particular course of treatment is adequate or proper. *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997).

Finally, to the extent that Plaintiff contends that Corrections and County Defendants were deliberately indifferent to his foot injury because they failed to appropriately address his grievances in which he informed them that he was not receiving adequate medical treatment, Plaintiff fails to state a claim. As set forth above, non-physician defendants cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer*, 991 F.2d at 69. Additionally, where the medical Defendants have not been found to be deliberately indifferent in their treatment of Plaintiff, non-physician Defendants cannot be liable. *See id.*

In sum, since neither inadvertent failure to provide medical care nor mere negligence amount to deliberate indifference, the court finds that under *Estelle* and its

16

progeny, Plaintiff has failed to assert a claim that Defendants, or those that they supervised, were deliberately indifferent to Plaintiff's medical needs. Defendants' motions to dismiss will be granted. In addition, based on the court's finding that Plaintiff has failed to state a claim of deliberate indifference to his serious medical needs as to all Defendants, the court concludes that amendment would be futile. *See Alston*, 363 F.3d at 236.

## IV.    Conclusion

For the reasons set forth herein, the motions to dismiss filed by all three sets of Defendants will be granted.  Further, Plaintiff will not be permitted to file an amended complaint.

An appropriate order will issue.


                                        s/Sylvia H. Rambo
                                        United States District Judge

Dated:  August 8, 2013.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEE J. ROWLAND,** | : | **CIVIL NO. 1:CV-12-2299** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN TOM DURAN,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1) Defendants' motions to dismiss (Docs. 18 & 20) are **GRANTED**.

2) The Clerk of Court is directed to **CLOSE** this case.

3) Any appeal from this order is **DEEMED** frivolous and not taken in good

faith. *See* 28 U.S.C. § 1915(a)(3).

s/Sylvia H. Rambo
United States District Judge

Dated:  August 8, 2013.